UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JASMINE D.,

                Plaintiff,

    v.

COMMISSIONER OF SOCIAL
SECURITY,

                Defendant.
_____

**DECISION AND ORDER**

1:22-CV-00713 CDH

## INTRODUCTION

Plaintiff Jasmine D. ("Plaintiff") seeks review of the final decision of the Commissioner of Social Security ("the Commissioner" or "Defendant") denying her applications for disabled adult child benefits ("DAC") and supplemental security income ("SSI"), pursuant to Titles II and XVI of the Social Security Act (the "Act"). (Dkt. 1). Under Rules 5 through 8 of the Supplemental Rules for Social Security Actions Under 42 U.S.C. § 405(g) and Local Rule of Civil Procedure 5.5(d), the matter has been presented for decision by the parties' filing of motions for judgment on the pleadings. (*See* Dkt. 8; Dkt. 11; Dkt. 12). For the reasons that follow, the Court grants Plaintiff's motion to the extent that the matter is remanded for further administrative proceedings and denies the Commissioner's motion.

## BACKGROUND

On June 10, 2020, Plaintiff protectively filed applications for DAC and SSI.

(Dkt. 6 at 33, 88-89).[1] Her applications were initially denied on November 16, 2020, and upon reconsideration on May 27, 2021. (*Id.* at 33, 170-82, 192-216). Plaintiff requested a hearing before an administrative law judge ("ALJ") (*id.* at 218-19), which was held on March 15, 2022 (*id.* at 54-87). On April 13, 2022, the ALJ issued an unfavorable decision. (*Id.* at 30-53). Plaintiff sought review from the Appeals Council, which denied her request on July 22, 2022. (*Id.* at 6-12). Plaintiff thereafter commenced this action. (Dkt. 1).

## LEGAL STANDARD

### I. Administrative Determination of Disability

The Social Security Administration's ("SSA") regulations establish a five-step, sequential evaluation that an ALJ follows in determining whether a claimant is disabled within the meaning of the Act. *See Sczepanski v. Saul*, 946 F.3d 152, 156 (2d Cir. 2020); 20 C.F.R. §§ 404.1520(a), 416.920(a). At step one, the ALJ determines whether the claimant is currently engaged in substantial gainful work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not, the ALJ continues to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment is "severe" within the meaning of the Act if it significantly limits the claimant's physical or mental ability to do basic work activities. *Id.* §§ 404.1520(c), 416.920(c).

---

[1] In referencing the administrative transcript, the Court has referred to the page numbers generated by CM/ECF and found in the upper right corner of the documents.

If the claimant has at least one severe impairment, the ALJ proceeds to step three. There, the ALJ determines whether the claimant's impairment or impairments meet or medically equal the criteria of the impairments listed in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant does not have an impairment that both meets or medically equals a Listing and satisfies the Act's durational requirement, *see id.* §§ 404.1509, 416.909, the ALJ must determine the claimant's residual functional capacity ("RFC"), *id.* §§ 404.1520(e), 416.920(e). "The Social Security regulations define residual functional capacity as the most the claimant can still do in a work setting despite the limitations imposed by his impairments." *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013); *see* 20 C.F.R. §§ 404.1545, 416.945.

At step four, the ALJ determines whether, in light of the RFC assessment, the claimant is capable of performing any past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is unable to perform any past relevant work, the ALJ proceeds to the fifth and last step. At this step, the burden shifts to the Commissioner to demonstrate that, taking into account the claimant's age, education, work experience, and RFC, the claimant is capable of performing substantial gainful work that exists in the national economy. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999); *see* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## II.   Review by the Court

The Court has jurisdiction under 42 U.S.C. § 405(g) to review the Commissioner's final decision denying an application for disability benefits. It is not the Court's function to "determine *de novo* whether [the claimant] is disabled."

*Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted). Instead, in performing its review, the Court is "limited to determining whether the [Commissioner's] conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Selian*, 708 F.3d at 417 (citation omitted). If the Commissioner's findings of fact are supported by substantial evidence, they are "conclusive." 42 U.S.C. § 405(g). In other words, "[i]f there is substantial evidence to support the determination, it must be upheld." *Selian*, 708 F.3d at 417.

"Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003).

## DISCUSSION

### I.  The ALJ's Decision

The ALJ applied the five-step, sequential evaluation described above in determining whether Plaintiff was disabled. Before proceeding to step one, the ALJ found that Plaintiff had not attained the age of 22 as of June 10, 2020, the alleged onset date. (Dkt. 6 at 36).

The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since June 10, 2020, the alleged onset date. (*Id*.). The ALJ found at step two that Plaintiff had the following severe impairments: "major depressive disorder (MDD); generalized anxiety disorder (GAD); social anxiety disorder; obsessive

compulsive disorder; attention-deficit hyperactivity disorder (ADHD); unspecified eating disorder; and borderline personality disorder[.]" (*Id*. at 36). The ALJ also concluded that Plaintiff had the following non-severe impairments: hypothyroidism; obstructive sleep apnea; obesity; and thoracolumbar scoliosis. (*Id*.).

The ALJ found at step three that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any of the Listings. (*Id*. at 38). At step three, the ALJ specifically discussed the criteria of Listings 12.04, 12.06, 12.08, 12.11, and 12.13. (*Id*. at 38-40).

The ALJ assessed Plaintiff's RFC and determined that Plaintiff retained the ability to perform a full range of work at all exertional levels with the additional non-exertional limitations that Plaintiff:

> can understand, remember, and carry out simple instructions and tasks; maintain attention and concentration and regular attendance for simple unskilled work; work in a low stress work environment defined as one involving no supervisory duties, no independent decision-making, no strict production quotas (e.g., as with assembly line work), minimal changes in work routine and processes, no more than occasional interaction with supervisors, coworkers, and the general public, and no team or tandem work.

(*Id*. at 41). The ALJ then proceeded to step four and found that Plaintiff had no past relevant work. (*Id*. at 45).

The ALJ found at step five that—considering Plaintiff's age, education, work experience, and RFC—there were jobs that exist in significant numbers in the national economy that Plaintiff could perform. (*Id*. at 46-47). The ALJ ultimately concluded that Plaintiff was not disabled, as defined in the Act, from June 10, 2020, through the date of the ALJ's decision. (*Id*. at 47).

## II.   Remand for Further Administrative Procedures is Warranted

Plaintiff argues that: (1) the ALJ improperly considered the opinion of consultative examiner Dr. Janine Ippolito; (2) the ALJ's credibility finding was based on a selective and mischaracterized reading of the record; and (3) the ALJ failed to properly develop the record with Plaintiff's full mental health treatment history. (*See* Dkt. 8-1 at 1). For the reasons that follow, the Court agrees that the ALJ erred in his consideration of Dr. Ippolito's opinion. Having thus concluded, the Court need not and does not reach the other arguments raised by Plaintiff.

### A.   Standard for Assessment of Medical Opinions

In adjudicating a disability application, an ALJ must consider and weigh the evidence of record, including medical opinions. *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013); *see also* 20 C.F.R. §§ 404.1520c(b), 416.920c(b) ("We will articulate in our determination or decision how persuasive we find all of the medical opinions and all of the prior administrative medical findings in your case record."). The Commissioner's regulations set forth the following factors that the ALJ considers when assessing the persuasiveness of a medical opinion: (1) supportability, meaning that, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . ., the more persuasive the medical opinions . . .will be"; (2) consistency, meaning that, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be"; (3) relationship with the claimant, including the length of the treatment relationship, frequency of examinations, purpose of the treatment

relationship, extent of the treatment relationship, and whether the relationship included a physical examination; (4) specialization, meaning that the opinion of a specialist "may be more persuasive about medical issues related to his or her area of specialty" than the opinion of a non-specialist; and (5) "other factors that tend to support or contradict a medical opinion," which includes but is not limited to "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA] disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(c), 416.920c(c).

Supportability and consistency are the most important factors, and must be discussed in the ALJ's decision. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). The ALJ may, but is not required to, explain how he or she considered the other factors. *Id.*

### B.     The ALJ's Assessment of Dr. Ippolito's Opinion

Dr. Ippolito examined Plaintiff on November 3, 2020. (Dkt. 6 at 1113). Dr. Ippolito opined that Plaintiff was mildly limited in handling complex instructions and sustaining concentration and performing a task at a consistent pace, moderately limited in interacting adequately with supervisors, coworkers and the public and sustaining an ordinary routine and regular attendance at work, and moderately to markedly limited in regulating emotions, controlling behavior, and maintaining well-being. (*Id.* at 1116).

The ALJ found Dr. Ippolito's opinion that Plaintiff had a moderate to marked limitation in regulating emotions, controlling behavior, and maintaining well-being "entirely unpersuasive," citing a "a lack of supporting evidence amongst Dr. Ippolito's clinical findings, and due to inconsistency with the remaining evidence, which reveals

only moderate limitation of adaptive function, and no marginal adjustment per discussion appearing under bolded finding #4, above." (*Id.* at 43).[2]

"[W]hen an ALJ adopts only parts of a medical opinion, he must explain why the other parts were rejected." *Donald S. v. Comm'r of Soc. Sec.*, No. 20-CV-01292-MJR, 2022 WL 1302131, at *4 (W.D.N.Y. May 2, 2022) (citation omitted). Plaintiff argues that the ALJ failed to adequately explain his rejection of the most severe limitations identified by Dr. Ippolito. (Dkt. 8-1 at 17-20). The Court agrees.

The ALJ's unelaborated assertion that Dr. Ippolito's opinion lacked supporting evidence in her clinical findings is insufficient to comply with his obligation to discuss supportability. *See Monique V. v. Bisignano*, No. 3:24CV1864(RMS), 2025 WL 2027628, at *8 (D. Conn. July 21, 2025) ("Courts within this circuit routinely find legal error when the ALJ fails to meaningfully discuss or explain the factors with specificity."). The ALJ provided no explanation for this conclusion, nor can the Court glean his reasoning from the record. Dr. Ippolito noted that Plaintiff had a history of inpatient hospitalization for suicidal thoughts, self-harm, and eating disorder. (Dkt. 6 at 1113). Plaintiff was "somewhat disheveled" and only "fairly groomed." (*Id.* at 1115). Her mood was tired and her judgment was fair. (*Id.*). Her attention and concentration were impaired due to fatigue and distractibility. (*Id.*). Plaintiff reported being unable to drive due to lacking a driver's license and unable to use public transportation. (*Id.*). She reported that she did not do any cooking, cleaning, laundry, or shopping. (*Id.*). Dr. Ippolito concluded that Plaintiff had a guarded prognosis due

---

[2]   "[B]olded finding #4" refers to the ALJ's step three analysis. (*See* Dkt. 6 at 38).

to the severity of her symptoms. (*Id.* at 1116). Without further explanation from the ALJ, it is entirely unclear to the Court how he concluded that Dr. Ippolito's observations were inconsistent with her opinions.

The ALJ's incorporation of his step three analysis regarding "adaptive function" (Dkt. 6 at 43) does not clarify the matter. In his step three analysis, the ALJ cited Dr. Ippolito's finding that Plaintiff had "no deficits of cognitive function, while assessing [Plaintiff] with average intelligence and appropriate general fund of information." (*id.* at 40). It is unclear to the Court how having average intelligence and an appropriate general fund of information correlates to being able to regulate one's emotions, control one's behavior, and maintain one's well-being, and the ALJ provided no explanation for any purported connection. "[T]he ALJ's reasoning must always be sufficiently discernible as to allow a reviewing court to ensure that the ALJ employed the proper standards and rendered a decision supported by substantial evidence." *Jennifer S. v. Comm'r of Soc. Sec.*, 771 F. Supp. 3d 256, 266 (W.D.N.Y. 2025) (quotation and citation omitted); *see also Cecelia J. v. Comm'r of Soc. Sec.*, No. 19-CV-1483-HBS, 2021 WL 431673, at *3 (W.D.N.Y. Feb. 8, 2021) ("The Court cannot conduct a meaningful review of the ALJ's decision without some indication of what inferences the ALJ drew from the record evidence and how those inferences led him to his RFC finding.").

The ALJ also failed to meaningfully explain how Dr. Ippolito's opinion was purportedly inconsistent with the other evidence of record. His incorporation of his step three analysis regarding adaptive function, without any additional explanation, fails to "build an accurate and logical bridge from the evidence to his conclusion to

enable a meaningful review." *Tami B. v. Comm'r of Soc. Sec.*, No. 3:21-CV-01460 (JCH), 2023 WL 2403898, at *7 (D. Conn. Mar. 7, 2023) (citation omitted). In particular, it is unclear to the Court how the ALJ considered Plaintiff's well-documented history of self-harming behavior in rejecting the relevant portion of Dr. Ippolito's opinion. (*See, e.g.,* Dkt. 6 at 396, 1085, 1322). In his step three analysis, the ALJ made no mention of Plaintiff's self-harming behavior. (Dkt. 6 at 38-40).

The ALJ's failure to meaningfully explain how he assessed Dr. Ippolito's opinion "leaves the court with unanswered questions and does not afford an adequate basis for meaningful judicial review." *Scott v. Comm'r of Soc. Sec.*, No. 19-CV-00959, 2020 WL 6205693, at *4 (W.D.N.Y. Oct. 22, 2020) (citation omitted). Remand for further administrative proceedings is therefore required.

## CONCLUSION

For the foregoing reasons, the Plaintiff's motion for judgment on the pleadings (Dkt. 8) is granted to the extent that the matter is remanded for further administrative proceedings, and the Commissioner's motion for judgment on the pleadings (Dkt. 11) is denied. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

_____
COLLEEN D. HOLLAND
United States Magistrate Judge

Dated:  September 29, 2025
        Rochester, New York